Filed 6/17/26  P. v. Delgadillo CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MANUEL RODRIGUEZ DELGADILLO,<br><br>    Defendant and Appellant. | B343979<br><br>(Los Angeles County Super. Ct. No. XSOA037554) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel J. Lowenthal, Judge. Affirmed.

Nancy Gaynor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Manuel Rodriguez Delgadillo appeals the trial court's order denying his petition for resentencing under Penal Code section 1172.6 at the prima facie stage without ordering an evidentiary hearing (*id.,* subd. (c)).[1] We affirm.

## BACKGROUND

In June 1987, Delgadillo shot and killed Jose Luis Olivera. The People charged Delgadillo with a single count of murder (§ 187, subd. (a)). They further alleged premeditation (*ibid.*) and personal use of a handgun (§ 12022.5, subd. (a)).

The case proceeded to trial in 1994. Four alternative charges were presented to the jury: first degree murder; second degree murder; voluntary manslaughter; and involuntary manslaughter. The allegation that Delgadillo personally used a handgun was also put to the jury. As they are dispositive of this appeal, we detail several relevant jury instructions.

As part of CALJIC No. 17.31, the jury was instructed: "The purpose of the court's instructions is to provide you with the applicable law so that you may arrive at a just and lawful verdict. . . . Disregard any instruction which applies to facts determined by you not to exist." As part of CALJIC No. 1.00, the trial court instructed the jury to "apply the law that I state to you, to the facts, as you determine them, and in this way arrive at your verdict and any finding you are instructed to include in your verdict. [¶] You must accept and follow the law as I state it to you, whether or not you agree with the law." (Brackets omitted.) As part of CALJIC No. 1.01, the jury was instructed: "Do not single out any particular sentence or any individual point or instruction and ignore the others. Consider the instructions as a whole and each in light of all the others."

---

[1]     Undesignated statutory references are to the Penal Code.

Turning to the substantive charges, per CALJIC No. 3.31, the jury was instructed: "In the crime and allegations [*sic*] charged in Count 1, namely murder and voluntary manslaughter, which is a lesser crimes [*sic*] thereto, there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator. Unless such specific intent exists the crime or allegation to which it relates is not committed. [¶] The specific intent required is included in the definitions of the crimes or allegations set forth elsewhere in these instructions." (Brackets omitted.)

As part of CALJIC No. 8.10, the jury was instructed: "Every person who unlawfully kills a human being with malice aforethought is guilty of the crime of murder . . . . [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. A human being was killed. [¶] 2. The killing was unlawful, and [¶] 3. The killing was done with malice aforethought." (Brackets omitted.) Struck from the form CALJIC No. 8.10 was any option to convict Delgadillo of murder based on the commission or attempted commission of a felony inherently dangerous to human life.[2] Pursuant to CALJIC No. 8.11, the jury was instructed on the meaning of "malice aforethought." The sole instruction defining second degree murder was given by way of CALJIC No. 8.30: "Murder of the second degree is . . . the

---

[2]    The trial court struck from the form CALJIC No. 8.10 optional language whereby a person could be guilty of second degree murder without malice aforethought if the killing " 'occurred during the commission or attempted commission of a felony inherently dangerous to human life. [Blank to specify predicate felony] is a felony inherently dangerous to human life.' " (See *People v. Hansen* (1994) 9 Cal.4th 300, 321–322 (dis. opn. of Mosk, J.) [setting forth contemporary instruction].)

unlawful killing of a human being with malice aforethought when there is manifested an intention unlawfully to kill a human being but the evidence is insufficient to establish deliberation and premeditation."

Pursuant to CALJIC Nos. 8.40 and 8.45, the jury was instructed on voluntary and involuntary manslaughter, respectively. As part of the involuntary manslaughter instruction, the jury was instructed that a killing for purposes of such offense is unlawful if it occurred "[d]uring the commission of a misdemeanor which is inherently dangerous to human life, namely, the offenses of brandishing a weapon and/or assault and battery." They then received specific instructions on the elements of those predicate misdemeanors.

As part of CALJIC No. 8.50, the jury was instructed that "[t]he distinction between murder and manslaughter is that murder requires malice while manslaughter does not." That instruction continued: "To establish that a killing is murder, and not manslaughter, the burden is on the People to prove beyond a reasonable doubt each of the elements of murder . . . ." Finally, as part of CALJIC No. 8.51, the jury was instructed: "If a person causes another's death, while committing a felony inherently dangerous to human life, the crime is murder. If a person causes another's death while committing a misdemeanor inherently dangerous to human life, the crime is manslaughter." (Brackets omitted.)

The jury found Delgadillo guilty of second degree murder and found true the allegation that he personally used a handgun in the commission of the offense.

The trial court sentenced Delgadillo to an aggregate term of 17 years to life.

4

In April 2023, Delgadillo filed in propria persona a checkbox petition for resentencing under section 1172.6 asserting, among other things, that he "could not presently be convicted of murder . . . because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." The trial court appointed counsel.

The People filed a brief in opposition to the petition, attaching, among other things, the jury instructions and completed verdict form. Delgadillo filed a brief in response. After conducting a prima facie hearing on the petition pursuant to section 1172.6, subdivision (c), the trial court declined to set an evidentiary hearing and denied the petition based on the record of conviction. This appeal followed.

## DISCUSSION

### I. Applicable Law and Standard of Review

Section 1172.6 provides an avenue for resentencing of persons convicted of murder under a theory invalidated by recent changes to sections 188 and 189. (See § 1172.6, subds. (a), (e).) One such invalidated theory is second degree felony murder in which malice was imputed to the defendant based on his commission of a felony inherently dangerous to human life. (*People v. Nino* (2025) 111 Cal.App.5th 844, 854–855.)

"[T]he path to resentencing under section 1172.6 involves three stages. It begins with a facially valid petition that entitles petitioner to counsel, continues with asking whether petitioner has made a prima facie case for relief, and, if so, proceeds to an evidentiary hearing on the ultimate question of whether petitioner should be resentenced." (*People v. Patton* (2025) 17 Cal.5th 549, 562 (*Patton*).)

5

Because Delgadillo's petition was denied after he was appointed counsel but without an evidentiary hearing, we are concerned here only with the second, or prima facie, stage.

A trial court may deny a petition at the prima facie stage " ' "if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition.' " ' " (*Patton*, *supra*, 17 Cal.5th at p. 563.) Put another way, if the record of conviction forecloses the possibility that the defendant was convicted under an invalidated theory, the petition is properly denied without an evidentiary hearing. (See *id.* at pp. 565–566, 569.)

The record of conviction a court may consider includes the jury instructions and verdict forms. (*People v. Harden* (2022) 81 Cal.App.5th 45, 50 (*Harden*).)

"We independently review a trial court's determination on whether a petitioner has made a prima facie showing." (*Harden*, *supra*, 81 Cal.App.5th at p. 52.)

## II.  Analysis

Delgadillo contends his record of conviction does not foreclose the possibility he was convicted under an invalid second degree murder theory. This contention is premised on the notion that a juror may have voted to convict based on the following language from CALJIC No. 8.51 in isolation from all others: "If a person causes another's death, while committing a felony inherently dangerous to human life, the crime is murder." We reject Delgadillo's contention.

As a preliminary matter, it is reasonable to presume that this language was retained in the form CALJIC No. 8.51 instruction in error. The trial court deliberately struck from the CALJIC No. 8.10 definition of murder language that would have

permitted the jury to render a murder verdict based on the commission of an inherently dangerous felony. (See fn. 2, *ante*.) Moreover, when the court *did* instruct on a homicide theory (voluntary manslaughter) predicated on the commission of a different crime inherently dangerous to human life, the court both specified the predicate misdemeanors (brandishing a weapon and assault and battery) in the homicide instruction and gave separate instructions defining those misdemeanors. Nowhere did the instructions specify or instruct on any felonies by which the jury could have convicted Delgadillo of second degree felony murder.

Delgadillo argues any possibility a juror relied exclusively on the CALJIC No. 8.51 language, no matter how remote, precludes summary disposition of his petition. For this proposition, he relies on *People v. Curiel* (2023) 15 Cal.5th 433, 438 (*Curiel*). His reliance is misplaced.

*Curiel* concerned a defendant convicted of first degree murder by a jury fully instructed on the now-invalidated "natural and probable consequences" theory of first degree felony murder. (*Curiel, supra*, 15 Cal.5th at pp. 446–447.) The People argued the trial court was nevertheless correct to deny Curiel's resentencing petition at the prima facie stage because the jury found, as part of a gang-murder special-circumstance allegation, that Curiel " 'intended to kill.' " (*Id.* at p. 447.) Thus, the People argued, the jury found express malice and therefore did not rely on the invalidated natural and probable consequences doctrine to impute malice. (*Ibid.*) The Supreme Court rejected this argument because "intent to kill" was not sufficient "by itself to establish any valid theory of liability." (*Id.* at p. 463.) It explained that both direct aiding and abetting and implied malice theories for murder

each had additional elements, concluding "[a] finding of intent to kill does not, standing alone, cover all of the required elements. It does not itself show that a petitioner like Curiel is liable for murder under any valid theory." (*Ibid.*) While the jury's "intent to kill" ruling was insufficient in Curiel, the court recognized "we may look to the jury's verdicts, and the factual findings they necessarily reflect, to determine whether the record of conviction refutes the factual allegations in [a section 1176.2] petition." (*Id.* at p. 465.)

In *Curiel* there was no irregularity in the jury instructions, leaving only the question of whether the factual findings the verdict "necessarily reflect[ed]" satisfied a still-valid theory of Curiel's conviction. (*Curiel, supra,* 15 Cal.5th at p. 465.) Because the instructions were clear, there was no doubt as to what those factual findings were.

Here, the extraneous language in CALJIC No. 8.51 introduces a potential ambiguity as to what findings the verdict necessarily reflected. Both before and after *Curiel,* Courts of Appeal considering such issues in the section 1172.6 context have applied the same standard the United States Supreme Court and California Supreme Court apply in the instructional error context when considering whether a jury relied on an improper theory[3]: whether there is a *reasonable likelihood* the jury understood its instructions to support a conviction on a now-invalid theory of murder. (See *People v. Rushing* (2025) 109 Cal.App.5th 1025, 1032 [finding no " 'reasonable possibility' " jury relied on extraneous instruction on invalidated theory of felony murder];

---

[3]    See *Estelle v. McGuire* (1991) 502 U.S. 62, 72; *People v. Clair* (1992) 2 Cal.4th 629, 663.

*People v. Allen* (2023) 97 Cal.App.5th 389, 397 [applying "reasonable likelihood test"]; *People v. Estrada* (2022) 77 Cal.App.5th 941, 947–948 [same].)[4]

Applying that test here, there is no reasonable likelihood the jury convicted Delgadillo based on the stray language in CALJIC No. 8.51. " 'It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions.' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433.) We cannot presume the jury misunderstood or failed to follow the court's instructions on the law. (*People v. Buenrostro* (2018) 6 Cal.5th 367, 431.)

To convict Delgadillo of murder based on CALJIC No. 8.51 alone, a juror would have needed to ignore the directive not to "single out any particular sentence or any individual point or instruction and ignore the others" and to "[c]onsider the instructions as a whole and each in light of all the others." Interpreting CALJIC No. 8.51 to dispense with the additional elements for murder specified in CALJIC No. 8.10 would amount to ignoring CALJIC No. 8.10. Convicting on this basis would also run afoul of CALJIC No. 3.31, which required the jury to find "specific intent" as "included in the definitions" of the applicable "crimes . . . set forth elsewhere in these instructions." (Brackets omitted.) CALJIC No. 3.31 established the primacy of CALJIC No. 8.10 over CALJIC No. 8.51, as the former "defined"

---

[4]     The People recently raised to our Supreme Court the question of whether the "reasonable likelihood" standard applies at the prima facie hearing on a section 1172.6 petition. (See *People v. Lopez* (2026) 19 Cal.5th 639, 670.) The court declined to address it as outside the scope of the issues on appeal. (*Ibid.*)

murder, whereas the latter merely "distinguished" murder and manslaughter.

Moreover, to convict Delgadillo of murder based on CALJIC No. 8.51 alone, a juror would have needed to come up with a predicate felony inherently dangerous to human life on his own. Delgadillo offers that a juror could have surmised "waving a gun around in a way that it goes off and shoots someone in the head" is a felony based on the trial court's instruction that brandishing—which includes "unlawfully us[ing] [a firearm] in any fight or quarrel"—is a misdemeanor. But such rank speculation about law not addressed in the instructions would go against the trial court's admonishment that the instructions "provide you with the applicable law" and to "apply the law that I state to you."

In any event, even if the reasonable likelihood test did not apply, we would still reach the same conclusion. The jury did not simply convict Delgadillo of "murder," as Delgadillo contends CALJIC No. 8.51 invited it to do. Instead, it convicted Delgadillo of "MURDER IN THE 2nd DEGREE," under CALJIC No. 8.30. The only instruction by which it could have reached this verdict required each juror to conclude Delgadillo killed "with malice aforethought" based on a "manifested . . . intention [to] unlawfully . . . kill" Olivera. This theory of second degree murder remains valid today. (§ 187, subd. (a), § 188, subd. (a)(1), § 189, subd. (b).)

## DISPOSITION

The trial court's order denying Delgadillo's petition for resentencing pursuant to section 1172.6 is affirmed.


RICHARDSON, J.

WE CONCUR:


CHAVEZ, Acting P. J.


GOORVITCH, J.